Good morning, Your Honors, and may it please the Court. My name is Justin Felton, and as an admitted law student under the supervision of Andrew Knapp, I represent the petitioner, Mr. Oscar Gomez-Ponce. Your Honors, I will do my best to reserve three minutes for rebuttal. Your Honors, Petitioner's actions, albeit criminal, do not render him removable, and certainly do not require the Board to have a second bite at the apple to create alternative theories of liability. Petitioner respectfully requests that this Court not only reverse the Board's decision, but vacate the removal order to allow Mr. Ponce to properly return to the United States as a legal permanent resident for two reasons. It's my understanding, Counsel, and I'll stop you right there. It's my understanding there is one misdemeanor on the record in May of 1993, and you don't dispute that that's a CIMT, correct? That is correct, Your Honor. So we're only talking about the next potential CIMT? Correct, Your Honor. The question before this Court today is whether 288-AB1 is an indivisible statute, meaning it can only be viewed per the Supreme Court's decision to comp through the categorical lens. Because 288-AB1 solely requires oral copulation... Does everybody agree that we can't do it categorically? Your Honor... Are we just fighting about whether we should be allowed a modified categorical approach? It's my understanding, Your Honor, that is indeed the question before the Court, whether the categorical approach is appropriate or whether the Board is able to look to the police report to pull out unrelated facts to define this as a modified categorically crime involving moral turpitude. I suspect I should have asked the government that question, but that's the way I saw it, too. We're just trying to determine whether we should have or whether we should allow a modified categorical approach to this particular crime, right? Correct, Your Honor. And does de Camp answer that for us? It's Petitioner's stance that de Camp is the first place to start in answering the question, Your Honor. De Camp established that the categorical approach is the only approach to use when a statute is indivisible. Looking back at the Supreme Court precedent earlier in 2013, Moncrief established that in the immigration setting, the categorical approach should be applied the same. As this Court also established in Young v. Holder in 2012, there is no reason in the immigration setting to treat the categorical approach differently. So the question in this case turns on whether 288a)(b)(1 can be divisible. If it can, the modified categorical approach would be appropriate to look at in defining this as a CIMT. However, here, 288a)(b)(1, by listing its elements as oral copulation of a minor under the age of 18, has no further crimes written within that statute and thus is indivisible. Because it is indivisible, we may only look at the statute when defining it as a crime involving moral turpitude through the categorical approach, asking, Are there crimes that would be swept under the statute that by definition would not be morally turpitudinous? And the answer to that question is yes. This statute is so broad-sweeping, it would encompass behavior that was otherwise legal. If the two individuals were married, they would not be prosecuted under the statute. And when using the categorical approach, these types of culpable behaviors that are not otherwise morally turpitudinous must be considered. It's my understanding that not only you believe that it is not a categorical match, the government believes it and the BIA believed it. That is correct, Your Honor. So we're really trying to determine if this is divisible. Correct, Your Honor. As probably noted, the Board itself said in its decision that 288a)(b)(1 is not categorically a crime involving moral turpitude. However, found my claim removable using the modified categorical approach. And as this ---- The Board never addressed that question earlier, right? I'm sorry, Your Honor. I didn't actually go to the beginning. The Board did not address the question earlier on whether or not this is a divisible statute. That is correct, although the Board explicitly didn't describe whether this was a divisible statute or not. The ---- when dealing with legal questions, this Court is able to not defer to the Board and answer the question today. And as mentioned previously, because the statute itself doesn't list multiple crimes within the same subsection, this crime is not divisible. Unlike a statute ---- But the question I'm getting at is since the Board hasn't addressed that question  Your Honor, remand is unnecessary here when we're dealing solely with questions of law. And here, because the question ---- and we're dealing also with a criminal statute, which affords less deference to the Board and the government. Here, because we're only trying to decide the divisibility or the divisible nature of 288a)(b)(1, which is not a question involving new facts that were in the record to be looked at or anything along those lines, the Board ---- remand is unnecessary. This Court today, in looking at the statute, can decide whether it is divisible. Do you have to test whether it's necessary or not? If it's ---- excuse me, Your Honor, maybe I spoke too quickly. In sort of addressing the idea that the Board is owed deference in some regards, but not with solely questions of law, which we have here, whether 288a)(b)(1 is divisible. And because 288a)(b)(1 cannot be further subdivided, there aren't multiple charging elements that would change the definition of the crime, it is indivisible. In looking at 288a as a whole, the statute itself is further subdivided. And Petitioner does concede that 288a or excuse me, 288 as a statute is divisible. But the further inquiry ---- Kennedy, I understand all your arguments as to why at least you believe it's not divisible. My question is why shouldn't the Board be given the opportunity to answer that question first before we address it? Your Honor, there are two reasons why that is unnecessary. One, there is no other outcome that the Board could reach different than this Court, that 288a)(b)(1 is indivisible. So to delay the process and further hinder my client, currently my client is outside the country, and even if the Board was to reconsider on remand, he would still stay in El Salvador, where he's currently placed, unless the Board deemed it necessary that he was here for the proceedings. Even if that was the case, he would still be held in detention. And I'd like to kindly remind this Court that Mr. Ponce was a legal permanent resident here in this country, admitted in June of 1987. And because his 288a)(b)(1 conviction is not categorically a crime involving moral turpitude, the Board improperly removed him. Returning back to the question of whether 288a)(b)(1 is divisible, in looking at Dekompf, the Court there considered whether a statute itself ---- there were two inquiries, rather. The first being, was the statute subdivided in a way that a jury or judge would have to decide what elements were met in establishing the actual crime? So for a very simplistic example, if the statute itself listed the word weapon as an element, but part of the sentencing required to ---- or excuse me, but part of the sentencing mattered on what actual weapon was used, that would be a divisible statute. Because we'd have to dig deeper to decide what weapon was actually used. I guess my good colleague has asked you the tough question, which I'm again going to ask you. Do you have any cases which would suggest that we should determine whether divisible or not, rather than send to the BIA to do it? Yes, Your Honor. Excuse me. In Malia v. Holder, this Court in 2011 said that legal questions owe no deference to the Board and thus remain as unnecessarily. Further, in Augular-Turcios, this Court again established that the government must stick with its litigation strategies, just as any defendant must. And so here, when we're dealing with the question of a divisible statute or not, because it doesn't involve any expertise that the Board may have, there's no reason to remand to allow them to create alternative theories of liability. Let me ask you a second question. Is Deschamps, that's the way I say it, I'm probably wrong, but I'm from Idaho, so I'll just keep saying it. Is that applicable to immigration proceedings? Yes, Your Honor. Who said that? Your Honor, this ---- Well, I know the Supreme Court put it down, but I guess the ultimate question is, shouldn't I let the BIA determine whether it's applicable to immigration proceedings? No, Your Honor. That is unnecessary here, and I'm actually drawing a blank on the case. If you'll bear with me for one minute, I will. Although the Board in a published decision has not said that Deschamps applies in the immigration setting the same way, since the Deschamps case has come down from the Supreme Court, the Board has not actually even argued a matter of Lanferman or used it to justify that the categorical approach can be applied differently in the immigration setting. And forgive me, Your Honor, for not having a case at the tip of my tongue, but in deciding whether Deschamps applies in the immigration setting, if we look at Moncrief that came down from the Supreme Court just before Deschamps ---- Is Taylor-Shepard instructive at all? Yes, Your Honor. In looking ---- in the Taylor case, it established actually the categorical approach and when it's appropriate. This Court recently, in 2011, Gill v. Holder, explained that when dealing with the categorical approach ---- I'm excuse me, that's the wrong case. In Young v. Holder again, this Court established that the categorical approach and the modified categorical approach should be applied in the same fashion in the immigration setting as they are in anywhere else. So even though Deschamps didn't specifically say that the divisibility analysis should apply equally in the immigration setting, in light of this Court's decisions establishing that the categorical approach should be applied the same way, there's no reason to think that the Board should be given any sort of deference or ability to wiggle with the categorical approach when looking at 288a)(b)(1). Olivas-Mota, does that help in any regard? I mean, how do you view Olivas-Mota? Olivas-Mota, Your Honor, does fit within this framework that Petitioner suggests because in Olivas-Mota, this Court actually struck down the Silva-Trevina framework in that third prong in looking into the factual record, just as many of the other circuits have. And so its respondent's position, the government's position, they should be given an opportunity to view how these impact in the immigration setting. However, because the Board itself has already said that 288a)(b)(1 is not categorically a crime involving moral turpitude, these two new cases that actually just ask the Board to return to a previous test, only using the categorical approach unless the statute is divisible, does not require any expertise for the Board to need a remand. And, Your Honors, I'd like to save the rest of my time. I'm sorry, but I need to ask you a real quick question. If we determine that 288a)(b)(1 is not a crime of moral turpitude, do we need to go on to review whether or not it's an aggravated felony? No, Your Honor, you would not need to. And I would like to save the rest of my time for rebuttal. Thank you. Thank you. Good morning, Your Honors. I'm Erica Miles for Attorney General Holder. The outcome of this case is not a foregone conclusion. There's not solely a legal question left to be answered in this case. There are three reasons that this Court should remand the case in its entirety. The first is, as you were already discussing, there have been significant changes in the legal landscape and the methodology that the Board may apply in determining whether or not a crime renders somebody removable since the time that this case was decided. Additionally, the current record of conviction strongly indicates that Gomez-Ponce is still removable for a single crime involving moral turpitude based on his 1993 offense. And the Board has reached that it is a crime involving moral turpitude. Third, because there still remains much for the Board and the immigration judge to do in this case. If he is indeed removable, which is a determination the Board needs to make, then the question is, is he eligible for cancellation of removable? And would it grant that relief? I guess we have to start right at the first. It seems to me we're really trying to decide if this later crime, not the first, is a CIMT. And it seems to me that we then are trying to determine whether we would use a categorical or a modified categorical approach. It seems to me everybody agrees we can't go on the categorical approach. Do you agree? Yes. So then if we can't go on the modified or the categorical approach, then we've got to determine a given day comp or day chomp, as I say it, whether we can do even any modified categorical approach, right? That's the question if the Court retains this case. The government's position is that this is a question that the Board really should have an opportunity to answer in the first instance. The question that the Board then would answer is, is it divisible, I guess? I mean, is that what you're saying? We would send it back to determine whether it's divisible. That's the question. The government's requesting the Court to send it back to the Board for it to look at this case anew in the context. That is one of the questions the Board would have to answer given the current charge of removability, whether or not it's divisible. But the broader question the Board would need to answer is, does day comp actually apply in the immigration context? It has matter of law enforcement on the books. Your sister circuit in the Second Circuit sent back the law enforcement case asking the Board to determine what is a divisible statute. That Court thought it was within the Board's purview. Based on that remand, the Board – However, we have taken a different approach, haven't we? You'd have to agree. This Court – When we come to divisibility, we don't stop at all. We look at the statute and we say whether it is or it isn't. There are several cases I could cite you that say we do that. Why shouldn't we do it here? This Court has – before day comp, this Court actually took a very liberal approach from – Liberal. Liberal, I mean wide, broad, forgiving approach. Remember, I'm from Idaho. The approach was once the Court determined that it wasn't a categorical match, immediately, as long as the statute was perhaps broader than it permitted, go immediately proceeding to the modified categorical approach. And the Board followed that. This Court's case law, this Court's methodology in this case, and it was proper at the time it was before the Board. Things have significantly changed now. Is this statute divisible? I mean, if we remand, what will you argue to the BIA? Homeland Security, I can't know for sure. Right now – What will you argue? Homeland Security's position – it's being briefed before the Board right now, just so you know. There's supplemental briefing on this issue. Homeland Security's taking the position that day comp does not apply in the immigration context. We'd have to go on bunk to do that, wouldn't we? Don't we have cases right on the books now that say it does apply? Actually, this Court hasn't analyzed whether it applies. It's just applied it. It's assumed it applies. It hasn't reached the question, hasn't answered why it believes it applies. But, yes, it has applied it. I agree with that. We would have to ignore our own law to say that de comps didn't apply in the immigration context. Well, we're asking you not to speak to it at all in this case and in the wide swath of cases. We've already spoken to it, though. I mean, why wouldn't we just follow our own law? I mean, I understand that the Board may be looking at it, but I don't know. And I think there's cases that say that when it deals with these sort of questions of law, that the BIA doesn't offer any additional expertise, with all due respect to the BIA, that we couldn't look at ourselves. So what's your response to that? Our response is that even assuming de comp applies, and the Board would agree with that, the Board reaches its decision, there's still more that can be done in many of these cases. Just because they're not removable at this moment under this new shift in legal methodology doesn't mean. What else? I mean, first, let me just get an answer from you, if I could. Is the statute divisible? It does not appear to be divisible. Okay. So what else would be done? In this case, Mr. Gomez-Ponce is currently still removable. Based on the facts that I have in this record. How? He has, as the Board determined, his 1993 offense for sexual battery by restraint is a crime involving moral turpitude. The Board reached that in this case because he was charged for having two. So this is one of the two. The Board's already found that it's a crime involving moral turpitude. And it is a ground of removability, a single crime involving moral turpitude. Could you be able to do that in this case, go back and try to pursue that when you didn't do it in the first instance? Or would you have to open up a new case against him? Well, when it's remanded, the case is back open. So, and even though I understand you're concerned about principles perhaps of revisiting. Doesn't that depend on the scope of the remand? It could, yes. This Court has the ability to limit. But when it doesn't limit, then it is viewed as open. This Court's case law says that. But this is not a new theory of removability. Homeland Security has still charged that this particular offense qualifies as a crime involving moral turpitude. It would just be a different number under the statute, which then would have an additional requirement of the timing, that it happened within five years of his admission. But you had your chance to go at him for that, and you decided to go instead on the oral copulation of a minor being an aggravated crime. It went on both. Because this, the 93 conviction still had to serve as one of the two. He was charged as having two crimes involving moral turpitude. And DHS charged him as the both. So the oral copulation was the second. Are you saying there are two different statutes? I mean, one that says a single CIMT makes an alien removable, and then another one that requires two? Yes. Why would there be two statutes like that? Because there are different theories. Is there a statute that says you have to have three? Honestly, I can't understand why Congress drafted the statute this way, but it does exist. This is an often used ground, the single crime involving moral turpitude. So you look at that as a different ground or the same ground, as was charged in this case? It's a different charge, but it's related. And the predicate offense here, the 1993, that would serve as the single, has already been reached as a crime involving moral turpitude by the board. You didn't charge that here, did you? DHS didn't. But, again, DHS was operating under a different legal landscape, as was the board at the time that it decided which charges to lodge. Different legal landscape. I still don't understand how that affects us today, I mean, based on the law and our ability to interpret them. Sure. But let me ask you, you mentioned Lamperman, is that right? Yes. But you didn't cite, the BIA didn't cite Lamperman when deciding petitioner's appeal. So even if this Court did remand, is there any reason to suspect that the BIA would reconsider Lamperman here? This Court cited Quintero Salazar, this Court's decision in the Ninth Circuit, and it used that as the basis for why it employed the modified categorical approach in the way that it did in this case. Because Ninth Circuit case law did not, up until now, undertake a divisibility analysis. Descamp was the first time, post-Descamp was the first time this Court has discussed divisibility as a necessary analysis before proceeding to the modified categorical approach. And the Board is bound by the circuit in which it's adjudicating cases. So it did not cite matter of Lamperman regarding what is and what is not a divisible statute because this Court hasn't been applying that type of analysis. The Board followed Ninth Circuit case law in its methodology in proceeding to the modified categorical approach and finding that that oral copulation additionally is a crime involving moral turpitude. Let me go back and I want to clarify what you referred to as a changed legal landscape. First of all, is it the government's position or the Board's position that the Board has not yet decided whether or not Descamp applies in the immigration context? It's an open question before the BIA. Is that your position? Yes, they've asked for supplemental briefing in at least two cases. Then the second question is, I think you also commented that although we have cases, the Ninth Circuit that have applied Descamp in the immigration context, there's no case that expressly holds after analysis that Descamp should apply in the immigration context. Is that also the government's position? Yes. All right. Now, I want you to give me an example. What's the best case the Petitioner can cite for the proposition that the Ninth Circuit has already decided that Descamp applies in the immigration context? This Court has done it in Aguilar-Salazar, I believe is the name of the case. Oh, sorry. Aguilar-Tercios. This Court applied it. I don't know if they've done it now, but applied it without discussion. Yes. It recognized, because this was the third time the case was before it. Yes. I thought I did. You're probably very well familiar with it. So the Court recognized that the Supreme Court issued its decision, Descamp. It said we're going to revisit it, look whether or not the statute is divisible, and it applied the Descamp approach in that case. Now, is it further the government's position that this panel, this three-judge panel, is not bound by Aguilar-Tercios because, you know, it's sort of just like a determination without a discussion? Yes. It's not bound by it because the Court did not explicitly state that Descamp applies in the immigration context and provide an answer as to why it would determine that. So in your view, it's not good authority to cite for a holding that Descamp applies in the Ninth Circuit, in immigration cases. Is that your position? Yes. All right. I just want to get clear with your position. Let me ask you a couple questions. Is there any, I think my distinct judge next to me asked the question, and let me ask an equivalent question, and is there any binding precedent that compels remand? I mean, I know, is there any precedent, I think the question was asked, that doesn't compel remand, but is there any that does compel remand? I think this Court's most recent decision in Ceron is, provides us with a very compelling reason why remand. Well, but Ceron, the BIA hadn't decided whether the crime there was either an aggravated felony or a crime involving moral turpitude. Here, the BIA has. So I don't think, I'm curious, do you have anything else other than Ceron that would provide as precedent, or a binding, this Court to say that we have to remand? Given that you're asking in light of whether or not he's removable as the single CIMT, Inos v. Ventura, the Thomas case, this is the regular remand rule. There's fact-finding left in this case. Ventura, though, only requires remand when the issue involves a determination, like Are you saying that in this instance, the BIA has special expertise more so than this Court? Absolutely. The question More so than this Court on the question of whether or not applying the law on whether it's divisible. I'm answering your question in the context you were asking whether or not the single I believed you were asking whether or not the single CIMT renders him removable, and you expressed that the Board has already found that, as I provided. That's not the end of the question as to removability. However, because But then you said Ventura. Ventura deals with special country conditions. I think that may be distinguishable, and so I'm trying to figure out what's next. What's your next authority? What's next is that to determine removability under the single CIMT ground, there's also a within five years of admission. Petitioner's counsel is attempting to say that his client was lawfully admitted prior to 1989, and the record just does not show that. So the question of date of admission, that is expertise for the Board, absolutely. And since we're talking about the admission, let me just clarify, because I think it was discussed earlier. Do you dispute that it only charged, that the government only charged the petitioner as removable on the one ground, and that is that he had committed two CIMTs after admission? I don't dispute the position that he possibly, depending on what the Board says on remand, it could still be removable for two CIMTs, because we don't know what the Board's going to do with whether or not to apply DECOMP and immigration proceedings. Additionally, as to the Silva-Trevino definition of CIMT, you discussed with petitioner's counsel how Olivas-Mata affects things. This Court did away with Step 3 in Silva-Trevino, so the methodology this Court struck down. However, we don't know what's left of Silva-Trevino. In Silva-Trevino, the Board did come up with a categorical definition for a crime involving moral turpitude for these types of statutory rape offenses. We don't know if that definition is going to stand anymore in light of what's been happening in the circuits. Silva-Trevino in its entirety may go away, it may not. But as this Court recognizes, defining what is a crime involving moral turpitude is absolutely within the Board's purview. This Court gives Chevron deference to the Board's published decisions on what constitutes a crime involving moral turpitude, and the Board very well might be revisiting its generic definition of what is a crime involving moral turpitude in the statutory rape type of context. That is a germane question in this case, even involving the oral copulation offense that we've been talking about.  Sure. Couldn't you argue that Ceron, which you've been discussing with Judge McGeough, is similar to this case in that here the legal question that's open, according to your position, is whether or not Descamp applies at all in the immigration context? Yes, to some extent. And because before Descamp, this Court permitted the Board to proceed to the modified categorical approach in the way that it did in this case. This Court's case law contributed to what potentially is now Board error, and that is analogous to what happened in the Ceron case. The Board followed Ninth Circuit case law in, excuse me, proceeding to the modified categorical approach. Now the Supreme Court has potentially said that's not permissible. The Board should have an opportunity to revisit and reexamine this case now in light of the legal landscape that might be established under Descamp and Olivas-Mata. Thank you. Your Honors, I'd like to address just a few points in first dealing with Ceron. It's my reading of Ceron that this Court said that the issue at hand there was whether the Board had the opportunity to decide whether the crime was categorically defined or not. Here, I'd like to remind the bench that the Board already said specifically 288a)(b)(1). No, but it doesn't have to be exactly the same question. The question the Board does not have a chance to decide is whether Descamp applies at all in the immigration context. Correct, Your Honor. And the answer to that, to correct what I said previously, is this Court's recent decision in Aguilar-Turcios specifically Where does Aguilar-Turcios discuss that issue? Your Honor, it's my reading of Aguilar-Turcios where this Court, bear with me for one moment here. Sure. This Court specifically said at page 2293 of Aguilar-Turcios that to determine One moment. Explained the modified categorical approach only applied, quote, to determine whether alternative element in a divisible statute formed the basis for defendant's conviction. The Court then continued to discuss the importance of using the categorical approach and only using the modified categorical approach in limited circumstances. Because here, 288a)(b)(1), has two But that case never addresses whether or not Descamp should even be applied in the immigration context. It just goes ahead and applies it, right? Correct, Your Honor. So there's no case that discusses whether or not it's correct, is there, in the Ninth Circuit, of whether Descamp should be applied in the immigration context. You concede that point? Yes, Your Honor. Not directly on point. However, I was correcting myself from previously when I was asked if there was a case, at least in this circuit, discussing the possible applicability of Descamp. And I think that is the most on point. And just to finish briefly, respondents seem to suggest that Mr. Ponce could be removed on a never previously charged crime of moral turpitude within five years. First, let me reiterate that the Board never charged this to begin with. So to unremit, to allow them to create, again, alternative theories of removability, because the theory of two CIMTs no longer holds water, just seems unjust. And second, it would be Petitioner's stance that on remand, this, the 243A charge in 1993 was well outside the five-year window when Mr. Ponce was admitted to this country. And unless there are further questions. If we remand, how narrowly would you argue the remand should be? Your Honor, it's Petitioner's stance that on remand, the sole question would be whether 288AB1 is divisible in light of the comp, which, again, it's the Petitioner's stance that it is not. And this Court could decide this today and vacate the Board's removal order to bring Mr. Ponce back to this country. Thank you, Your Honors. Thank you. Thank you for your argument. Case 12-71420, Gomez-Ponce v. Holder is submitted.
judges: Tashima, Smith, Murguia